**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**VICTOR PERKINS,**

                                        **Plaintiff,**

v.                                                                            **6:20-CV-0196 (NAM/ATB)**

**ROME MEMORIAL HOSPITAL, and**
**DOCTOR MITCHELL R. RUBINOVICH,**

                                        **Defendants.**
_____

**APPEARANCES:**

Victor Perkins,
Catholic Charities
1355 New York Avenue NE
Washington, DC 20002
*Plaintiff Pro Se*

Andrew R. Borelli, Esq.
GALE GALE & HUNT, LLC
P.O. Box 6527
Syracuse, NY 13217
*Attorneys for Defendant Rome Memorial Hospital*

Anthony J. DiPierna, Esq.
MARTIN GANOTIS BROWN MOULD & CURRIE, P.C.
5788 Widewaters Parkway
DeWitt, NY 13214
*Attorneys for Defendant R. Mitchell Rubinovich, M.D.*

**Hon. Norman A. Mordue, Senior United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.      **INTRODUCTION**

         Plaintiff Victor Perkins brings this action against Defendants under 42 U.S.C. § 1983 and

New York State law alleging claims arising out of a medical procedure at Rome Memorial

Hospital on November 16, 2009.  (Dkt. No. 1).  Defendants Rome Memorial Hospital and

1

Robert Mitchell Rubinovich, M.D. ("Dr. Rubinovich") now move separately for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or alternatively, for summary judgment pursuant to Rule 56.  (Dkt. Nos. 16, 18).  Plaintiff (who is pro se) opposes Defendants' motions.  (Dkt. Nos. 31–32, 37).

## II.    JUDGMENT ON THE PLEADINGS

As an initial matter, when matters outside the pleadings are presented on a motion under Rule 12(c), the Court has two options: "exclude the additional material or convert the motion to one for summary judgment."  *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 214 (2d Cir. 2020) (citing Fed. R. Civ. P. 12(d)).  Here, the Defendants have submitted affidavits which purport to evidence the extent of their involvement with Plaintiff's medical treatment.  (*See, e.g.*, Dkt. Nos. 16-12, 16-13, 18-3).  However, given the early stage of this case, the Court declines to consider these additional materials and proceed to summary judgment.  Rather, the Court will decide the motions for judgment on the pleadings and limit review to "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'"  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).  The facts alleged by Plaintiff are assumed to be true for purposes of this decision.  *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

### A. Background

In a nutshell, Plaintiff alleges that over the course of a decade, Rome Memorial Hospital and Dr. Rubinovich "deliberately denied the plaintiff the facts on the diagnosis, treatment, and prognosis" regarding a medical procedure he underwent in November 2009.  (Dkt. No. 1, p. 1).  The story begins on November 16, 2009, when Plaintiff—then incarcerated at Great Meadow

Correctional Facility in Comstock, NY, was taken to Rome Memorial Hospital and operated on by Dr. Rubinovich.  (Dkt. No. 1; Dkt. No. 1-1).  Specifically, Plaintiff was diagnosed with a "fracture medial malleolus of the left ankle," and Dr. Rubinovich performed an "open reduction and internal fixation."  (*Id.*).

According to the Operative Report, the "medial malleolus was reduced anatomically, was helped provisional with two K-wires and then two 4-0 cannulated screws were drilled across using washers to compress the fracture site."  (Dkt. No. 1-1, p. 1).  Plaintiff alleges that this account is false, and that his "medial malleolus bone was removed" and the hardware placed in his ankle consisted of two screws, two washers, a plate, and pins.  (Dkt. No. 1, p. 2).  Further, Plaintiff alleges that the "screws with washers were drilled from [his] medial malleolus area through his talus bone to his fibula bone."  (*Id.*).  Plaintiff alleges that the plate "was then placed over the screws and the pins pinned into the tibia bone to keep the plate in place."  (*Id.*).  Thus, contrary to the Operative Report, Plaintiff alleges that "the screws were placed in [his] talus bone and not his medial malleolus bone."  (*Id.*).

Plaintiff claims that for approximately eleven years, "the defendants have deliberately misinformed [him] on the diagnosis, treatment, and prognosis of his injuries."  (Dkt. No. 1, p. 2).  Plaintiff claims that Defendants misinformed him of the extent of his injuries and the scope of the medical procedure.  (*Id.*, p. 3).  Further, Plaintiff alleges that "the indent in [his] medial malleolus area is induced by the plate," and "the swelling in both his fibula and medial malleolus areas is the result of two cannulated screws drilled from his medial malleolus area through his talus bone to his fibula bone."  (*Id.*).  Plaintiff alleges that due to Defendants' actions: he can no longer run or jump without pain; he suffers pain when walking or sitting for long periods; he is

limited in lifting and carrying; he suffers chronic daily ankle and knee spasms; he suffers insomnia due to pain; he loses his balance constantly; and he walks with a limp.  (*Id.*, p. 3).

In addition to the Operative Report, Plaintiff also attached to the Complaint: Nurse's Notes, X-rays, photographs of his foot/ankle, and a medical report dated September 28, 2017. (Dkt. Nos. 1-2, 1-3).  The medical report states in part that Plaintiff reported "constant, throbbing pain" in the left ankle/left foot, radiating to the left knee area, aggravated by physical activities. (Dkt. No. 1-3, p. 4).  Plaintiff reported that he underwent "orthopedic fixation" of his left ankle in November 2009.  (*Id.*, p. 5).

### B.  Standard of Review

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." *Bank of N.Y. v. First Millennium*, *Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  Thus, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  Although a complaint need not contain detailed factual allegations, it may not rest on mere "labels, conclusions, or a formulaic recitation of the elements of the cause of action," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Court will grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008).

## C.  Discussion

Based on the facts above, Plaintiff alleges a Section 1983 claim for violation of his constitutional rights, as well as state tort claims for fraud, negligence, and intentional infliction of emotional distress.  Defendants argue that Plaintiff's claims fail as a matter of law because: 1) Plaintiff did not effect proper service; 2) Plaintiff's claims are time-barred; and 3) Plaintiff has failed to state a claim upon which relief can be granted.  (Dkt. Nos. 16-15, 18-2).

### 1)  Service of Process

Plaintiff commenced this action on February 24, 2020.  (Dkt. No. 1).  Pursuant to the Local Rules of this District, he was required to carry out service on Defendants within 60 days.  *See* N.D.N.Y. L. R. 4.1(b).  The record shows that Plaintiff requested to serve Defendants via certified mail.  (Dkt. No. 5).  However, United States Magistrate Judge Andrew T. Baxter denied this request, informing Plaintiff that "service of a complaint and summons by certified mail alone generally does not constitute adequate service."  (Dkt. No. 7).  The Order further explained how Plaintiff could effect service and directed him to file an acknowledgment of service with the Clerk upon doing so.  (*Id.*).  To date, Plaintiff has not filed an acknowledgement of service with the Court, and Defendants state that they have not received from Plaintiff a copy of the waiver of service form or a copy of the Complaint served in accordance with Rule 4 of the Federal Rules.  (Dkt. No. 16-1, ¶ 13; Dkt. No. 18-1, ¶ 14).

In response, Plaintiff states that on March 24, 2020, he attempted to serve a copy of the summons and complaint on Defendants, but they "negated service due to the COVID-19 pandemic."  (Dkt. No. 32-3, p. 2).  Plaintiff has submitted affidavits from a Process Server who states that on March 24, 2020, he was unable to serve Defendants despite diligent attempts because the hospital was not allowing admittance due to COVID-19 and the doctor's office was

closed for the same reason.  (Dkt. No. 32-2, p. 35; Dkt. No. 37-1, p. 42).  Under these circumstances, and given Plaintiff's pro se status and the lack of any significant prejudice to Defendants (who have appeared, answered, and filed motions in this action), the Court finds good cause to excuse Plaintiff's failure to effect timely service.  Accordingly, dismissal is not warranted on this basis.

### 2)  Statute of Limitations

Next, Defendants argue that Plaintiff's claims are barred by the statute of limitations. The limitations period for a Section 1983 action in New York State is three years from accrual. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002).  Federal law determines when a Section 1983 cause of action accrues.  *See id.* at 80.  Ordinarily, the cause of action arises when the plaintiff knew or had reason to know of his injury.  *See Keating v. Carey*, 706 F.3d 377, 382 (2d Cir. 1983).

In some cases, late-filed claims may nonetheless proceed based on equitable tolling, which applies in rare and exceptional circumstances in which "a plaintiff has been prevented in some extraordinary way from exercising his rights."  *Pearl*, 296 F.3d at 85 (internal quotation marks omitted).  "One such exceptional circumstance occurs when the plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant."  *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003).  In determining whether equitable tolling is warranted, a court must consider whether the plaintiff: "(1) has acted with reasonable diligence during the time period [he] seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  *Id.* at 80–81 (internal quotation marks omitted).

Here, Plaintiff's case stems from an alleged injury over ten years ago—the surgery performed by Dr. Rubinovich at Rome Memorial Hospital on November 16, 2009. (Dkt. No. 1). The question is thus when Plaintiff knew or had reason to know about the alleged injury, i.e. that his "medial malleolus bone was removed" and screws and a plate were affixed to his talus bone. (*Id.*, p. 2). Plaintiff claims in vague terms that since November 2009, "the defendants have deliberately misinformed [him] on the diagnosis, treatment, and prognosis of his injuries." (*Id.*). Plaintiff also alleges in conclusory fashion that the "statute of limitations is extended by way of the defendants' continuation of wrong doctrine and nuisance." (*Id.*, p. 3). However, the Complaint does not state a specific date when Plaintiff allegedly learned about the true nature of his surgery, nor does he allege any interaction with Defendants after November 2009. (*See generally* Dkt. No. 1).

On these facts, Plaintiff's Section 1983 claim is untimely because he commenced this action more than ten years after the surgery (well beyond the three-year statute of limitations), and he has not set forth any facts indicating when he became aware of his cause of action. Plaintiff's opposition papers offer some clues, indicating that he was partially aware of his injury on April 25, 2016, when he contacted Rome Memorial Hospital and explained to them "that they had administered him false information on the surgery performed on his lower extremity at their Hospital on 11/16/2009." (Dkt. No. 32, p. 2). Even assuming that is true, Plaintiff's Section 1983 claim (commenced February 24, 2020) would still fall outside the three-year time limit. To the extent Plaintiff argues that Defendants continued to mislead him and conceal the truth, he has failed to allege any specific supporting information, such as who told him what and when.

Simply put, Plaintiff has not provided a factual basis for equitable tolling or applying the continuing violation doctrine, because the Complaint fails to allege any specific actions by Defendants after November 2009.

Plaintiff's state law claims must be dismissed for the same reason.  In general, the statutes of limitations under New York State law for fraud, negligence, and intentional infliction of emotional distress are respectively two years, two years and six months, and one year from the date of discovery.  (*See* Dkt. No. 16-15, pp. 20–26) (citing relevant New York State law). Because Plaintiff has not alleged any factual basis for triggering the statute of limitations within these time periods (as opposed to November 2009), his state law claims are time-barred.  *See Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) ("To assert a continuing violation for statute of limitations purposes, the plaintiff must allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in the furtherance of that policy.  This test screens out Eighth Amendment claims that challenge discrete acts of unconstitutional conduct or that fail to allege acts within the relevant statutory period that are traceable to a policy of deliberate indifference.") (internal quotations and citation omitted). !

### 3)  Section 1983 Claim

Further, Defendants argue that even if Plaintiff's Section 1983 claim is not time-barred, he has failed to state a claim upon which relief can be granted.  Specifically, Defendants contend that Plaintiff has not alleged any facts to plausibly infer that they acted under color of state law, in as much as Rome Memorial Hospital is a private entity (with Dr. Rubinovich in its employ), which merely provided Plaintiff with medical treatment.

In general, "to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *W. v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (quotation and citation omitted). "Private parties are not proper defendants in a Section 1983 action unless the private parties were acting under color of state law." *Jae Soog Lee v. L. Office of Kim & Bae, PC*, 530 F. App'x 9, at *9 (2d Cir. 2013). "A private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

Here, Plaintiff appears to allege a Section 1983 claim for deliberate indifference to medical needs under the Eighth Amendment and/or deprivation of due process under the Fourteenth Amendment, all relating to the surgery in November 2009. (Dkt. No. 1, pp. 3–4). Plaintiff alleges that "the actions of the defendants were wrong medically, in denying the Plaintiff from 2009 to 2020, the facts on the diagnosis, treatment and prognosis of his injuries." (*Id.*, p. 3). Based on these allegations, the gist of Plaintiff's case is a garden variety state law medical malpractice claim, one which has no business in federal court. Alerted to this problem, Plaintiff's opposition papers suggest that "Great Meadow Correctional facility encouraged Rome Memorial Hospital and medical Doctor Mitchell R. Rubinovich to assist them in concealing the truth of Plaintiff's injuries." (Dkt. No. 31, p. 5). Plaintiff further claims that Great Meadow caused his injuries on November 7, 2009, and since November 16, 2009, Defendants have "concealed" the injuries on behalf of Great Meadow. (*Id.*, p. 12).

However, this sort of conclusory allegation, even if it was in the Complaint, falls short. In order to plead a plausible Section 1983 claim against the Defendants, Plaintiff must specifically identify a relationship between them and a state actor.  To the extent Plaintiff alleges that Defendants conspired with Great Meadow Correctional Facility to deprive him of his constitutional rights, he must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324–25.  Similarly, a Section 1983 claim asserting joint activity must allege "specific facts tending to show agreement and concerted action." *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012) (citation omitted).

Because Plaintiff has not pled specific facts to plausibly link Defendants to a state actor via joint activity, conspiracy, or any other theory, his Section 1983 claim must be dismissed. *See also McGugan v. Aldana-Bernier*, 752 F.3d 224, 230–31 (2d Cir. 2014) (affirming dismissal of the plaintiff's Section 1983 claim against private hospital absent allegations of state action); *Cambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").

## III.    LEAVE TO AMEND

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  For *pro se* claims, leave should be given "at least once when a liberal reading of the complaint gives any indication

that a valid claim might be stated.'" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  However, "leave to amend need not be granted when amendment would be futile." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016).

Here, Plaintiff is granted leave to amend.  Should Plaintiff do so, he must provide additional factual, non-conclusory allegations to state a timely claim and raise a right to relief above the speculative level, as discussed in detail above. *See Shomo*, 579 F.3d at 185 (permitting the plaintiff to amend and add non-time barred acts by the defendants in support of continuing violation theory).  Furthermore, Plaintiff must serve any amended complaint on Defendants within 60 days, in accordance with Rule 4 of the Federal Rules of Civil Procedure and Rule 4.1(b) of the Local Rules for the Northern District of New York.

IV.    **CONCLUSION**

For these reasons, it is

**ORDERED** that Defendant Rome Memorial Hospital's Motion to Dismiss (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Defendant Rome Memorial Hospital's alternative request for leave to amend its Answer is **DENIED as moot**; and it is further

**ORDERED** that Defendant Dr. Rubinovich's Motion to Dismiss (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Defendant Dr. Rubinovich's alternative request for leave to amend his Answer is **DENIED as moot**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within 60 days of the date of this Order; and it is further

**ORDERED** that Plaintiff must carry out service of the Amended Complaint on the Defendants within 60 days of filing, in accordance with Federal Rule 4 and Local Rule 4.1(b); and it is further

**ORDERED** that failure to do so will result in dismissal with prejudice; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

November 5, 2020
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge

12