UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VICTOR PERKINS,

                            **Plaintiff,**

v.                                                   6:20-CV-0196 (NAM/ATB)

ROME MEMORIAL HOSPITAL, and
DOCTOR MITCHELL R. RUBINOVICH,

                            **Defendants.**
_____

**APPEARANCES:**

Victor Perkins,
Catholic Charities
1355 New York Avenue NE
Washington, DC 20002
*Plaintiff Pro Se*

Andrew R. Borelli, Esq.
Gale Gale & Hunt, LLC
P.O. Box 6527
Syracuse, NY 13217
*Attorneys for Defendant Rome Memorial Hospital*

Kostas D. Leris, Esq.
Office of the Attorney General of the State of New York
The Capitol, Albany, NY 12224
*Attorneys for Defendant R. Mitchell Rubinovich, M.D.*

**Hon. Norman A. Mordue, Senior United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

      Plaintiff Victor Perkins brings this action against Defendants under 42 U.S.C. § 1983 and New York State law alleging claims related to a medical procedure at Rome Memorial Hospital on November 16, 2009. (Dkt. No. 47). Defendants Rome Memorial Hospital and Robert

Mitchell Rubinovich, M.D. ("Dr. Rubinovich") now move to dismiss the Amended Complaint. (Dkt. Nos. 55, 58). Plaintiff seeks an Order denying Defendants' motions. (Dkt. No. 63).

## II.     HISTORY

Plaintiff commenced this action on February 24, 2020, and in April of that year Defendants moved for judgment on the pleadings. (Dkt. Nos. 16, 18). In a decision dated November 5, 2020, the Court granted Defendants' motions, finding that Plaintiff's claims were untimely and failed to state a claim for which relief could be granted. (Dkt. No. 46). However, in light of Plaintiff's *pro se* status, the Court dismissed the Complaint without prejudice and granted leave to amend. (*Id.*).

## III.    BACKGROUND

In the Amended Complaint, Plaintiff alleges that over the course of a decade, Rome Memorial Hospital and Dr. Rubinovich denied him "the right to know or have reasons to know of the harm caused to him" by "falsifying the diagnosis, treatment, and prognosis of [his] injuries." (Dkt. No. 47, p. 2). First, Plaintiff alleges that he was injured during an assault at Great Meadow Correctional Facility on November 7, 2009. (*Id.*, p. 3). On November 16, 2009, Plaintiff was taken to Rome Memorial Hospital and operated on by Dr. Rubinovich, who allegedly "performed ankle replacement surgery on the plaintiff's lower left extremity." (*Id.*). According to the Operative Report, Dr. Rubinovich performed an "open reduction and internal fixation" wherein the "medial malleolus was reduced anatomically, was helped provisional with two K-wires and then two 4-0 cannulated screws were drilled across using washers to compress the fracture site." (Dkt. No. 47-1, p. 1). Plaintiff alleges that this account is false, and that his "medial malleolus bone was removed" and the hardware placed in his ankle consisted of two screws, two washers, a plate, and pins. (Dkt. No. 47, p. 3). In addition to the Operative Report,

2

Plaintiff also attached to the Amended Complaint: nurse's notes, x-rays, photographs of his foot/ankle, requests for medical records, and correspondence regarding his prison grievances. (Dkt. No. 47-1, pp. 3–24).

Plaintiff alleges that on December 24, 2009, he saw Dr. Rubinovich again for removal of his cast. (Dkt. No. 47, p. 3). Plaintiff alleges that Dr. Rubinovich informed him that "screws, washers, plate, and pins" had been placed in Plaintiff's ankle. (*Id.*). Plaintiff claims that he asked Dr. Rubinovich where the screws were located, and Dr. Rubinovich "indicat[ed] the screws were placed in his talus bone." (*Id.*). Next, Plaintiff alleges that on September 14, 2010, he was seen by an orthopedist who showed him a "false image of his ankle." (*Id.*). Plaintiff alleges that the orthopedist reviewed Plaintiff's operative report and confirmed that the screws were placed in Plaintiff's talus bone, "not his medial malleolus as false shown in x-ray and falsely mentioned in medical records." (*Id.*). Plaintiff alleges that on December 10, 2010, he saw another doctor at Elmira Correctional Facility, who confirmed that his medial malleolus bone was surgically removed on November 16, 2009. (*Id.*).

On September 23, 2012, Plaintiff submitted a grievance to his facility regarding allegedly "false medical records" which did not disclose all the hardware that had been placed in his ankle. (Dkt. No. 47-1, p. 13). Plaintiff alleges that as of October 13, 2012, he "discovered in push down on what appeared to be his medial malleolus bone . . . that he suffered injuries other than described in the operative report." (Dkt. No. 47, p. 4). On October 16, 2012, Plaintiff alleges that he submitted a grievance to his facility regarding the discovery of his injuries, and that he received "false" medical records in response, which inaccurately described the hardware in his ankle. (*Id.*). Specifically, the grievance stated that Plaintiff had come to the conclusion that his "medial malleolus bone was surgically removed." (Dkt. No. 47-1, p. 10). Plaintiff complained

3

that "for three years I've been told through medical reports and show[n] through x-rays that my medial malleolus is still in my ankle when it has been removed." (*Id.*).

Next, Plaintiff alleges that on April 25, 2016, he wrote to Rome Memorial Hospital and in response, the hospital "continued in denying [him] the right to know of injuries in sending a CD Disc as of 5/12/16 that contained a false misrepresentation of the injuries he suffered on 11/7/2009." (Dkt. No. 47, p. 4). Plaintiff alleges that on October 20, 2017, an x-ray was taken at Highland Hospital which "was no different from the false image the defendant(s) have displayed and administered plaintiff from 2009 to 2020." (*Id.*). Plaintiff also claims that on May 18, 2018, an x-ray was taken at Strong Memorial Hospital, which again showed a "false image of his injuries." (*Id.*). Plaintiff alleges that on May 6, 2020, another x-ray was taken at George Washington University Hospital, which showed a "false image of his injuries." (*Id.*).

## IV. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). The Court's review is limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

4

V.  **DISCUSSION**

Plaintiff alleges a Section 1983 claim for violation of his constitutional rights via theories of deliberate indifference and due process, as well as state law tort claims for fraud, negligence, and intentional infliction of emotional distress. (Dkt. No. 47). In moving to dismiss, Defendants argue that: 1) Plaintiff's claims are time-barred; and 2) Plaintiff has failed to state a claim upon which relief can be granted. (Dkt. No. 55-2; Dkt. No. 58-1).

1) **Statute of Limitations**

The limitations period for a Section 1983 action in New York State is three years from the date of accrual. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Federal law determines when a Section 1983 cause of action accrues. *See id.* at 80. Ordinarily, the date of accrual is when the plaintiff knew or had reason to know of his injury. *See Keating v. Carey*, 706 F.3d 377, 382 (2d Cir. 1983).

In some cases, late-filed claims may nonetheless proceed based on equitable tolling, which applies in rare and exceptional circumstances in which "a plaintiff has been prevented in some extraordinary way from exercising his rights." *Pearl*, 296 F.3d at 85 (internal quotation marks omitted). "One such exceptional circumstance occurs when the plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant." *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003). Another exception to the general rule is the continuing wrong doctrine, which means that "certain wrongs are considered to be continuing wrongs, and the statute of limitations, therefore, runs from the commission of the last wrongful act." *Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980) (citation omitted).

Here, Plaintiff's claims arise from an alleged injury over ten years ago—the ankle surgery performed by Dr. Rubinovich at Rome Memorial Hospital on November 16, 2009. (Dkt. No. 47). The question is thus when Plaintiff knew or had reason to know about the alleged injury, i.e. that his "medial malleolus bone was removed" and screws and a plate were affixed to his talus bone. (*Id.*). Although Plaintiff claims that Defendants have continued to misinform him of the diagnosis, treatment, and prognosis of his injuries, his allegations show that he was aware of the nature of his injury as early as December 24, 2009, when Dr. Rubinovich informed him that "screws, washers, plate, and pins" had been placed in his ankle and Dr. Rubinovich "indicat[ed] the screws were placed in his talus bone." (Dkt. No. 47, p. 3). Plaintiff further alleges that, on September 14, 2010, an orthopedist told him that screws had been placed in his talus bone, not the medial malleolus bone. (*Id.*). And Plaintiff filed two prison grievances in 2012 which claimed that he received "false medical records" relating to his surgery, and that his "medial malleolus bone was surgically removed." (Dkt. No. 47-1, pp. 10, 13).

Based on these facts, Plaintiff's Section 1983 claim would be untimely because he commenced this action on February 24, 2020, nearly ten years after discovering his injury and well beyond the three-year statute of limitations. Plaintiff argues that he "unaware of his injury, due to the state and defendant(s) on record denying him the full extent or severity of his injuries." (Dkt. No. 63-1, p. 9). But Plaintiff admits that he was informed in 2009 and 2010 that his medial malleolus bone was removed, and that hardware was placed in his ankle. (*Id.*). And Plaintiff displayed that knowledge in 2012 by filing grievances about "false medical records." Based on Plaintiff's allegations, there is no factual basis to find that, until the last few years, Defendants prevented Plaintiff from discovering the basis for his claims. Indeed, Plaintiff does not allege that Defendants were involved in the "false" x-rays taken in 2017, 2018, and 2020.

(Dkt. No. 47, p. 4). Thus, equitable tolling cannot save Plaintiff's Section 1983 claim. *See Gustafson v. Bell A. Corp.*, 171 F. Supp. 2d 311, 323 (S.D.N.Y. 2001) (finding that equitable tolling did not apply where the plaintiff "knew the *facts* that would comprise a cause of action") (emphasis in original).

As to the continuing wrong doctrine, Plaintiff alleges that the statute of limitations should be "tolled to the last date on which a wrongful act is committed." (Dkt. No. 47, p. 5; Dkt. No. 63-1, p. 10). Plaintiff alleges that a wrongful act was committed as recently as May 6, 2020, when an x-ray taken at George Washington University Hospital also showed a "false image of his injuries." (*Id.*). However, that alleged wrong was not committed by Defendants. The last alleged wrong attributed to Defendants in the Amended Complaint is when, on May 12, 2016, Rome Memorial Hospital sent Plaintiff a CD that "contained a false misrepresentation of the injuries he suffered on 11/7/2009." (*Id.*, p. 4). Using this date, Plaintiff's Section 1983 claim (commenced February 24, 2020) would still fall outside the three-year time limit.

In sum, even assuming that Plaintiff's allegations are true, he has not provided a factual basis that can save his claim using the continuing wrong doctrine. Thus, his Section 1983 claim is untimely and must be dismissed. *See Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) (affirming the district court's finding that the continuing violation doctrine did not apply to the plaintiff's claims because the plaintiff "did not allege any specific acts of deliberate indifference within the three-year period prior to the filing of the complaint").

Plaintiff's state law claims must be dismissed for the same reason. In general, the statutes of limitations under New York State law for fraud, negligence, and intentional infliction of emotional distress are respectively two years, two years and six months, and one year from the date of discovery. (*See* Dkt. No. 16-15, pp. 20–26) (citing relevant New York State law).

Because Plaintiff has not alleged any factual basis for triggering the statute of limitations within these time periods (as opposed to December 2009, September 2010, or at the latest May 2016), his state law claims are time-barred.

### 2) Section 1983 Claim

Further, Defendants argue that even if Plaintiff's Section 1983 claim is not time-barred, he has failed to state a claim upon which relief can be granted. Specifically, Defendants contend that Plaintiff has not alleged any facts to plausibly infer that they acted under color of state law, in as much as Rome Memorial Hospital is a private entity (with Dr. Rubinovich in its employ), which merely provided Plaintiff with medical treatment. (*See* Dkt. No. 55-2, p. 15).

In general, "to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *W. v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (quotation and citation omitted). "Private parties are not proper defendants in a Section 1983 action unless the private parties were acting under color of state law." *Jae Soog Lee v. L. Office of Kim & Bae, PC*, 530 F. App'x 9, at *9 (2d Cir. 2013). "A private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

Here, Plaintiff alleges a Section 1983 claim for deliberate indifference and due process, all relating to the surgery in November 2009 and follow-up treatment by Rome Memorial Hospital and Dr. Rubinovich. (Dkt. No. 47). The Court previously noted that "in order to plead

a plausible Section 1983 claim against the Defendants, Plaintiff must specifically identify a relationship between them and a state actor." (Dkt. No. 46, p. 10). The Court found that "[b]ecause Plaintiff has not pled specific facts to plausibly link Defendants to a state actor via joint activity, conspiracy, or any other theory, his Section 1983 claim must be dismissed." (*Id.*). Although the Court granted Plaintiff the opportunity to bolster his allegations, the Amended Complaint suffers from the same defect.

Plaintiff's opposition papers state that Defendants' actions "were at the state's direct benefit and at their specific behest." (Dkt. No. 63-1, p. 11). Plaintiff adds that Defendants were under contract to provide services to prison inmates. (*Id.*). But even if these allegations were properly pled, Plaintiff's claim would fall short. Plaintiff's theory appears to be that Defendants conspired with Great Meadow Correctional Facility to deprive him of his constitutional rights. To plead this sort of claim, he must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324–25. Similarly, a Section 1983 claim asserting joint activity must allege "specific facts tending to show agreement and concerted action." *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012) (citation omitted). Here, Plaintiff's conclusory allegations do not suggest any agreement between Defendants and Great Meadow Correctional Facility, beyond a simple contract to provide medical services. There are no alleged facts to plausibly infer a coordinated plan to deprive Plaintiff of his rights. Indeed, Plaintiff's allegations amount to pure speculation about a wide-ranging, decade-long conspiracy, which apparently also includes four non-defendant hospitals. (*See* Dkt. No. 47, p. 4).

As the Court has observed, "the gist of Plaintiff's case is a garden variety state law medical malpractice claim, one which has no business in federal court." (Dkt. No. 46, p. 9). Nothing in the Amended Complaint indicates otherwise. Accordingly, Plaintiff's Section 1983 claim is subject to dismissal for this reason as well. *See also McGugan v. Aldana-Bernier*, 752 F.3d 224, 230–31 (2d Cir. 2014) (affirming dismissal of the plaintiff's Section 1983 claim against private hospital absent allegations of state action); *Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.").

## VI.  LEAVE TO AMEND

Finally, Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court has already granted Plaintiff leave to amend once, directing that he must provide additional factual, non-conclusory allegations to state a timely claim and raise a right to relief above the speculative level. Plaintiff has failed to do so. Therefore, the Court concludes that permitting further amendment would be futile.

## VII.  CONCLUSION

For these reasons, it is

**ORDERED** that Defendant Rome Memorial Hospital's Motion to Dismiss (Dkt. No. 55) is **GRANTED**; and it is further

**ORDERED** that Defendant Dr. Rubinovich's Motion to Dismiss (Dkt. No. 58) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Request for an Order Denying Defendants' Motions (Dkt. No. 63) is **DENIED;** and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 47) is **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

April 19, 2021
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge